The opinion of the Court was delivered by
Duncan j. —
There are four bills of exceptions taken by the plaintiff in error, who was plaintiff below, to the admission and rejection of evidence.
The first is, on the admission of the two notes of Corlies 8? Naglee to Nathan Dunn, endorsed by him to Marshall 8? Goughler, and by them delivered over to the defendant, after the commencement of this suit. To understand the nature of this objection, it is necessary to give a brief view of this complicated transaction.
Marshall 8? Goughler were indebted to Corlies 8? Naglee in the sum of 1444 dollars 44 cent;s, and to Nathan Dunn in 367 dollars 58 cents. Corlies 8? Naglee were indebted to Nathan Dunn the amount of their two notes, 1321 dollars 68 cents. Corlies 8? Naglee's house was falling early in August, 1816, and made an assignment to their creditors on iOth August, 181G. Dunn was likewise a falling man, and made an assignment on 27th August, 1816. On 5th August, •1816, Dunn from Philadelphia, wrote to Marshall Si G'-*agfiler at Selin's Grove, informing them of the desperate state of Corlies Si Naglee, that they would break up in a few days and assign, and stating that he held these notes, proposed to Marshall Si Goughler to endorse them to them, to enable them to set them oif against their debt to Corlies SÍ Naglee, if they would give him their note ; and for rendering him this service, he promises them one hundred dollars. The note for which this action is brought, was for the amount of these notes, and the balance due to Dunn by them. It purports to be a note of 7th August, 1816. This letter recommends secrecy and enjoins silence, and chalks out a deceptive line of conduct to be observed by them. When this letter reached Marshall SÍ Goughler we have no account, but it certainly would have required a special messenger and a very speedy one, to reach them on the 7th August. It would be impossible for Dunn to foreknow that Selin was to be the payee, and the note is in his hand-writing. There was other evidence given, from which the defendant contended, that the negotiation between Dunn and Marshall Si Goughler, could not have taken place until after the general assignment of Corlies Si Naglee, and not until January, 1817, and therefore the whole was a contrivance to defraud the assignees of Corlies Si Naglee and their general creditors, and that the note was antedated to overreach the assignment. If this was so, it would be a good defence to the endorser. The drawers, Marshall Si Goughler, could have availed themselves of it, and so could their endorser, whose engagement was not an original undertaking, hut a guarantee that Marshall Si Goughler should pay. That Marshall Si Goughler could, against Dunn and against Dunn’s general assigmes, for whose use the suit was entered, some time after its commencement, (for Richter, it is admitted, was only an agent, and the note endorsed to him for collection,) is very clear ; for though they may have entered into the concert to defraud the assignees of Corlies Si Naglee, yet it is competent to them to resist payment on the ground of this fraud ; for it is quite clear, that Marshall Si Goughler would be still liable to the assignees, even if they had paid the money, *436 having notice of the assignment. I give no opinion whether the fraud was'proved or not; that was for the jury to decide. For though it was lawful for Dunn to secure his debt, by laying Hold of this plank, while the debt o{'Marshall & Goughler was Corlies Sí? Naglee’s, yet it would be fraudulent to accomplish it in the way in which this was alleged to have been done. For honest purposes, a note may be dated as of a day antecedent to that on which it was really given, and is good between the parties ; yet this cannot be done, where it is to be used as the instrument of fraud on the rights of others. The debt of Marshall £? Goughler, passed by the assignment, and when Marshall £i? Qoughler had notice of it, in equity, it would bind them, and they would become the debtors of the assignees. It would not be in their power to defeat the assignees, or change the distribution of the effects directed by the assignment. In this point of view, these notes were part of the res gesta, — the very pivot on which the whole scheme turned; and except for the balance due to Dunn himself, there would be no other consideration for the note endorsed by the defendant. They were not evidence by way of set-off, as Selin did not hold them until after the commencement of the action, but to shew what the consideration of this note was, — to shew that the plaintiff claimed through the medium of a fraud, for Dunn to every purpose is to be considered as the plaintiff; his assignees and himself are the same. The assignees took the action and thé note, subject to all their defects, — exposed to the same defence as if they had remained in Dunn’s hands. The note was not passed by a specific endorsement for a valuable consideration, without notice of fraud. The morality of the law will not suffer a man to recover by the medium of a dishonest act, — by the medium of an impure and falsified instrument. The law says to such a plaintiff, your hands are not clean, and we will- give you no assistance in our Courts. I avoid intimating any opinion whether the facts would be established by all the contending circumstances. That was to be submitted to the jury : but as these notes were a component part of the transaction, in that view they were competent and important evidence, and if the jury concluded the transaction to be fraudulent, and the note antedated to overreach the assignment, this would destroy the consideration, and go to the very root of this ac *437 tion, so far as respects the amount of these notes, but would, leave untouched the proper debt of Marshall Goughler, due to Dunn, on this head of defence ; but as a set-off they could not be read. Yet' from the notice of set-off, and some expressions of the Court in their charge, it is contended, they were given in evidence for that purpose ; but the ;answer of the Court to the seventh point of the plaintiff, explicitly dpdares that they could not be- given in evidence as a set-off, nor were they so offered. The second exception, yhich was to the admission of the deposition of Hollingshead, has not been supported. The rule of Court to take depositions, was made out in the name of .Richter alone ; he is constantly found, either as a party or agent; the first, writ'of error was taken on his affidavit, and he is in this the bail in error. Notice to the agent of taking depositions, has been always considered good notice ; and this is still stronger than the case of a bare agent; for he is the legal plaintiff, and until the suit was marked for the use of Dunn's assignees, he was liable for costs, and had an interest in the suit.-
This disposes of the third exception. And moreover, as the note was endorsed by Dunn ,to Richter, and the action brought in his name, he should have released all interest in the action to have rendered him competent. His saying or even swearing, he had no interest, would not make him competent; and I do not know, that the bare marking an action for another’s use, would discharge -the legal plaintiff from costs. As to Dunn himself, he was insolvent ; and it no where appears that the action was marked for the use of his assignees by any authority from them; But at least the costs up to the time of putting their names oh the record, should have been paid, before Richter was admitted to testify. 1 , ,
The fourth exception, -the plaintiff in error has sustained. The book, whether day book or leger, was evidence,, nqt as a matter of original entry or charging any one with a debt, but as proof of a collateral fact, the partnership of Marshall Goughler. Every thing was put in issue on the plea of non assumpsit. The making of the note was the first thing to be proved. The whole signature was in the hand writing of Marshall. The book, being the common book of Marshall Goughler, containing the partnership transactions, wasevidence of a partnership, and proved the authority of Mar, *438 shall to give the note in his name and GoughlePs. It might have been, and it was, redundant, but not irrelevant evidence. There was error in rejecting it.
There were a great number of special exceptions assigned to the charge of the Court; but there is little variety in them. It is unnecessary, and would be useless to consider them one by one. I will therefore content myself with considering them in one connected view. The demand on the maker and notice to the drawer are generally indispensable. They however may be waived by acts of the'endorser; and his promise to pay, with knowledge of the facts, would bind him. His ignorance of the law would not render the promise- void. For if, with knowledge of the fact of demand not having been made, he makes a promise, under the supposition that he will be still liable at law, it will be valid. Stevens v. Lynch, 12 East. 38. Bilbie v. Lumley, 2 East. 469. But the promise ought to be clear, and made out by unequivocal testimony. One, on being sued, says, that he does not know of any defence. This is no promise, or waiver of his legal objection. Griffin v. Goff, 12 Johns. 423. And if an endorser, under ignorance of the facts, pay the amount of a bill or note, he may recover it back in an action for money had and received. Chatfield v. Paxton Co., Chitty on Bills, 305, (note c.) Garland v. Salem Bank, 9 Mass. 408. It may be a question, whether the plaintiff who proves the promise, must shew, as part of his case, that the promise was- made by the defendant with knowledge that the legal requisitions had not been complied with, or whether it lies with the defendant to rebut the presumption arising from the promise. In Trimble v. Thorne 16 Johns. 152, it was decided, that the defendant’s knowledge could notbe intended from the mere fact of the subsequent promise; though the tenor of the modern English authorities is, that the endorser’s promise to pay is evidence of the averment in the declaration of demand and notice. The cases on this head are referred to in a note to the American edition of 2 Phillips, 38. The confession of judgment is not so strong as the recovering back of the money. -It may be evidence of an acknowledgment of liability, but is not conclusive evidence. It is not a legal presumption. It is capable of being explained and repelled by the circumstances under which *439 it was given. It was a circumstance to shew either demand and notice or a waiver of them. But if the defendant confessed the judgment by any false suggestion of the drawers,' and on the faith of a valid security to indemnify him, which security was found to be immediately worthless, if the jury believed it a contrivance between Marshall c2J Goughler and Dunn, in the first instance, to defraud the assignees of Corlies Sí? Na-glee, and this, part of a system to carry the plan into effect, by hooking in and fixing the defendant, and particularly, if at the time of endorsement, Marshall Goughler were insolvent, all this would be evidence to repel the presumption arising from the judgment and indemnity. The taking of the indemnity, being after action brought, if taken under the impression of a regular'demand and notice, and the endorser believed himself to be liable, would not be a waiver. 9 Mass. 332. And in this case, as the defendant received no benefit from the transaction, and as in law he would not' be bound without demand and notice, there is nothing unconscientious in this defence. He does not take advantage of a formal objection to commit a fraud, but to prevent a fraud being committed on him; and it is a principle that the endorser of a note, for the accommodation of the maker, is entitled to strict notice. French's Executrix v. Bank of Columbia, 4 Cranch. 141. Smith and others v. Becket, 13 East. 187. Brown v. Maffey, 15 East. 216. Brown v. Mott, 7 Johns. 361.
But the manner in which the Court stated the effect of the indemnity and confession of judgment, in treating of the effect of a subsequent promise, might have tended to mislead the jury, who might have supposed that no act or confession of the defendant, after action brought, would be evidence of a binding promise, or amount to a waiver of notice. This would be a sufficient ground to reverse the judgment.
The instruction of the Court was altogether correct as to the indemnity being rendered ineffectual, by the sale on a judgment prior to the conveyance from Goughler. The argument is, that it was land purchased after the judgment, and therefore was not bound by it, according to Colhoun v. Snider, 6 Binn, 135. That case has finally settled that a judgment did not bind after purchased lands. The elaborate opinions of Justices Yeates and Brackenr.idg.é never *440 satisfied my mind that in England, after purchased, lands were not bound by a judgment. The authorities on which " they relied, appeared to me to prove directly the contrary of the learned Judges’ position: and Mr. Sugden, in his Law of Vendors, (Sugden, 340,) a work of deep research and accurate discrimination, considers it always to have been the law, and so understood in practice, that judgments do bind after purchased lands, and consequently affect them in the hands of a purchaser. So is the law in. Maryland. Ridgely's Executors v. Gartrell, 3 Harris & M'Henry, 449. And in New York, Stow v. Tifft, 15 Johns. 464. It cannot be doubted, says Spencer, Justice, that a judgment will attach on lands of which the debtor becomes seised, at any time posterior to the judgment. And such was the opinion of the Chief Justice of this Court, in Colhoun v. Snider, 6 Binn. 135 ; but he rested on a supposed general understanding and usage. And it appears to have been the opinion of Chief Justice Shippen and Judge Smith, that the doctrine could not be supported upon the principles of the common law, but on a silent practice which prevailed in this State. That case has been decided. I would not therefore be understood as throwing out any thing to undermine its authority. The question is at rest. But as I consider the usage an innovation on the law, and not an improvement, I would not push it beyond that case, but would confine the rule most strictly to the point decided, and to the circumstances under which it was established. In this State, a judgment binds every equitable interest which the debtor has at the time of judgment.. Here, the debtor had an interest under his contract, under the written articles ; and equity looks upon things agreed to be done, as actually performed. Consequently, when a contract is made for the sale of land, equity considers the vendee as the purchaser of the estate sold, and the purchaser as a trustee for the vendor, for the purchase money. So much is the vendee considered, in contemplation of equity, as actually seised of the estate, that he must bear any loss which may happen to the estate between the agreement and the conveyance j and he will be entitled to any benefit ■ which may accrue to it in the interval; because, by the contract, he is the owner of the premises, to every intent and purpose in equity. Goughler being the *441 owner under the articles, the moment the legal title is acquired, and the equity and the law united, the judgment attaches and binds the united interest. I cannot see how they can be kept separate ; or how, if a man purchase an estate .payable by instalments, a new interest attaches as every instalment is paid ; and the different judgments would then bind to the extent of different instalments as they were paid in. This rule would be the most inconvenient in practice, and would place real estate, which generally is held by articles, in the first instance, in a state of great confusion and inextricable perplexity. It does not fall within the decision of Colhoun v. Snider; which rule I never would extend beyond its' letter. But it is not, on ariy principle which has been advanced in favour of that rule by any of its advocates, within its reason or spirit; and is at war with every conceivable state of property and every, doctrine of the law. And in Carkhuff v. Anderson, 3 Binn. 4, the case in principle is decided. The Chief Justice considered that a pre-emption right is bound by a judgment, and v(ben the title is completed, the judgment eo instanti attached to it. And Judge Bracxenridge puts the very case of lands held by articles, and that while so held, a judgment binds the title afterwards acquired.
But for the reasons given, judgment is reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.