\*Stiles, ex dem. Miller & McDonald, v. W. S. Murphy. [92

Judgment is not a lien upon after-acquired lands, aliened by the debtor before levied upon.

This case was adjourned here, for decision, from the county of Pickaway. It was an ejectment, and came before the court upon a case agreed. The material facts were these: T. W. Dyott, at June term, 1822, recovered a judgment, in the county of Pickaway, against Henry Nevill, for one thousand and twenty-three dollars and fifty cents. Execution was taken out and levied upon a tract of land containing three hundred and thirty-three and two-third acres, on March 24, 1825. In February, 1829, the undivided two-thirds of said land was sold, on Dyott's execution, to the defendant, for seven dollars sixteen and three-fourths cents per acre. The sale was confirmed, and a deed, in due form, executed by the sheriff to the defendant, who claims under it. On September 4, 1822, Nevill acquired title to this land; on January 27, 1823, Nevill executed a mortgage of the land to the lessors of the plaintiff. On January 4, 1825, a *scire facias* issued upon the mortgage, and a judgment of execution was rendered on January 5, 1825. On August 1, 1826, an execution issued, which was returned, *stayed*. A levy was first made January 1, 1828. On February 21, 1829, the property was sold to the lessors of the plaintiff for seven dollars and seven cents per acre. The sale was confirmed, and a deed executed, in due form, under which the lessors of the plaintiff claim.

FOLSOM, for the plaintiff.

EWING and DOAN, for defendants.

By the COURT:

The only question submitted, was, whether a lien of a judgment attaches to after-acquired lands, so as to affect the rights of a *bona fide* purchaser. The question now presented for consideration 93] was decided, by this court, in the *case of Roads *v.* Symmes, 1 Ohio, 313; but the confidence of learned counsel in a contrary opinion, has called the court to a more particular examination of the principles involved in that decision.

By the common law, a man could only have satisfaction of the goods, chattels, and present profits of lands. 3 Black. Com. 418. The lands and person were exempt from execution upon feudal principles, which it is not necessary to review. The king, by his prerogative, might have execution of body, goods, and lands; and in an action of debt against an heir, upon an obligation made by his ancestor, the lands descended were liable to execution. 3 Co. 12, a; 1 Bac. Ab. 686. These were the excepted cases at common law. The statute of Westminster 2, (13 Ed. I., c. 18) subjected a moiety; and the same year the statute *de mercatoribus*, all the lands of the debtor to execution. The proceedings under our *fieri facias* have some analogy to those under the first-mentioned statute, although the tenant by *elegit*, and the purchaser at sheriff's sale, hold very different estates. The statute of Westminster 2, is in these words: " When debt is recovered or acknowledged in the king's court, or damages awarded, it shall be from henceforth in the election of him that sued for such debt, or damages, to have a writ of *fieri facias* unto the sheriff, to levy the debt upon the lands and chattels of the debtor (saving only his oxen and beasts of his plow) and one-half of his lands until the debt be levied upon a reasonable price and extent. And if he be put out of the land, he shall recover it again by writ of *novel disseizin*, and after that by writ of *redisseizin*, if need be." Rastal's Statute, 149.

Strange as it may seem, it is very difficult to ascertain the extent given to liens under this statute. The 29 Car. II., c. 3, extended the creditor's right to a moiety of the debtor's land held in trust. Section 15 limits the lien to the day the judgment was entered. Blackstone says, " If the goods are not suffi-

Stiles, ex dem. Miller & McDonald, *v.* Murphy.

cient, then the moiety, or one-half of the freehold lands *which he had at the time of the judgment given*, whether held in his own name, or by any other in *trust* for him, is also to be delivered to the plaintiff to hold, till out of the rents and profits thereof the debt be levied, or until defendant's interest be expired." 3 Black. Com. 418. *2 Inst. 395, is cited, which is to the same effect. [94 Many of the English authorities warrant a different conclusion. Roll. 892; Plow. 72. The form of the *elegit* corresponds with the authorities last cited. The command of the writ to the sheriff is, "that without delay you cause to be delivered to the said A., by reasonable price and extent, all the goods and chattels of the said B., on the —— day of (*the day the judgment was signed*), the —— year of our reign, on which day the judgment was given, was, or at any time since, hath been seized to him, the said A., to hold," etc. Imp. 284. No adjudged case can be found in the English books, so far as opportunity has been allowed for examination, upon the question whether lands acquired subsequent to the judgment, and conveyed before the execution issues, are liable to inquisition under an *elegit*. The Supreme Court of Pennsylvania has traced the authorities to the year books, and conclude it is not settled by any of them. The learned judges examined the case (30 Ed. III. 24), and deny the inference drawn by subsequent elementary writers from it. 6 Bin. 135. The court, however, based their decision, in that case, upon the usages and practices which prevailed in Pennsylvania. The same court in the case, of Richter *v.* Selim, 8 Serg. & Rawle, 425, appear to consider their former decision an innovation upon the law, and not an improvement; they therefore confine the rule most strictly to the point before decided, and refuse to extend it beyond the letter. Indeed, more than a doubt is expressed of the correctness of the former decision.

In looking further into the American cases, the question still appears nowhere solemnly decided. It has been adjudged in New York, that where the body of the defendant has been taken in execution the lien of the land is suspended; and if, during imprisonment, a *fi. fa.* is issued on a junior judgment, and the land is sold, the purchaser shall hold. 13 Johns. 533. It is also said by Spencer, Judge, in Stow *v.* Tifft, "that it can not be doubted that a judgment will attach on lands, of which the judgment debtor becomes seized, at any time posterior to the judgment; and nothing could prevent a judgment creating a lien on the subse-

quently acquired lands of the judgment debtor, but the circum-
stance that his seizin, in the given case, was instantaneous." 15
Johns. 464. The question before the court was, whether a
widow could be endowed of lands when the seizin of the husband
was but for an instant, and passed from him *eo instanti* he ac-
quired it. The case of Ridgely *v.* Gartrill, 3 Harris & McHen.
449, was this: At May term, 1787, the plaintiff obtained a judg-
ment against G. Burgess, for the debt, etc., which was not paid.
At the time the judgment was rendered, Burgess was seized in fee
of a tract of land of more value than would satisfy the judgment.
In 1791, Brown's executors obtained a judgment for a hundred
pounds, and costs. In 1792 a *fi. fa.* issued, by virtue of which the
sheriff sold the land to the defendant, who paid the money and
obtained the deed. This was a *scire facias* to the defendant, as
terre-tenant, to make the land answer to the plaintiff's judgment.
The report furnishes no argument, or reference to authorities, or
even to the statutes of Maryland. The reporter says, "the court
gave judgment for the plaintiff upon the statement of facts."
Upon a careful examination of all the authorities within our
reach, the point under consideration does not appear to have been
solemnly adjudged, upon full investigation, either in England or
in our own country, except in Pennsylvania. Our researches
have furnished but little light upon the question, and it seems not
much less distinct in the mists of antiquity than in our own day.
We would appear, then, to violate no settled principle, in analo-
gous cases, by giving to our statute the construction which our cir-
cumstances and policy require. With us, the judgment creditor's
lien upon the debtor's land, the right to sue, and the manner of
transferring to the purchaser, are all matters of statutory regula-
tion. The statute declares that "the lands and tenements of the
debtor shall be bound for the satisfaction of any judgment against
such debtor, from the first day of the term at which judgment
shall be rendered." The writ of *fieri facias* "shall command the
officer to whom it is directed, that of the goods and chattels of the
debtor, he cause to be made the moneys specified in the writ; and
for want of goods and chattels, he cause the same to be made
of the lands and tenements of the debtor." It is provided in
section 11 of the same act, "that the sheriff, or other officer,
who, by such writ, or writs of execution, shall sell the said lands
and tenements so *levied upon, or any part thereof, shall

make to the purchaser or purchasers as good and sufficient a deed of conveyance for the lands and tenements so sold as the person or persons, against whom such writ or writs of execution were issued, might or could have made for the same, at any time after said lands become liable to said judgment, which deed shall be *prima facie* evidence of the legality of such sale, and the proceedings thereon, until the contrary be proved, and shall vest in the purchaser as good and as perfect an estate, in the premises therein mentioned, as was vested in the party, at or after the time when the said lands and tenements became liable to the satisfaction of the said judges." 22 Ohio L. 108. The legislature, in giving judgments on a lien, had particularly in view the lands that the debtor held at the time when the judgment was rendered. They clearly intended the judgment should attach to these, so that a purchaser would hold them *cum onere.* The execution, according to its command, was not only intended to embrace lands upon which the judgment was a lien, but those held by the debtor at the time the execution was issued and a levy made. The command of the *fi. fa.* certainly does not embrace, in terms or literally, the lands acquired at any time posterior to the judgment, but which had been aliened before the execution issued. Such can not, with strict propriety, be said to be the "lands of the debtor." They were not the lands of the debtor, and, therefore, not "bound by the judgment." The deed of conveyance shall be as good and sufficient as the debtor could have made at any time after the said lands became liable to the said judgment. According to our construction, the lands held by the debtor, when the judgment was rendered, as well as the lands held at the time of issuing the execution, are "liable to judgment," and to "the satisfaction of the judgment." The legislature has defined more explicitly the deed of the sheriff, and the effect of it. In giving the lien of the judgment, in the command of the *fieri facias*, in the definition of the sheriff's deed, and in declaring its effect, the legislature has guarded the terms employed in the most cautious manner, to save lands of the debtor, purchased after the judgment, and aliened before execution. This inference is most strongly deduced from the command of the *fieri facias*. If we are to arrive at the law of the court *from the form of the *elegit*, we may surely, with [97 equal propriety, infer the intention of the legislature, from the command of the *fieri facias*, as given in the statute. It is a mat-

ter of history that this law was drafted by learned counsel, appointed as a committee of revision, who were undoubtedly exactly acquainted with the form of the *elegit*. We can not but presume many members of the legislature, who passed it, were intimately acquainted with the common and statute law touching executions. It must have been well known that the *elegit*, in form, extended itself to a moiety of all lands of the debtor, held at the date of the judgment, or of which *he had been seized at any time since*. If such had been the intention of the legislature, they would have framed their execution accordingly. For the satisfaction of the execution, those are the lands of the debtor which are bound by the judgment, as well as those afterward acquired, but not conveyed. The terms in which this construction is expressed, are without ambiguity, and do not require analogies to render them satisfactory. But this point has been put to rest in the case of Roads *v.* Symmes. When a rule of construction has been adopted, upon which titles to real estate depend, it would lead to great inconvenience, if not injustice, to alter it. That decision may have been an innovation upon established principles of law—it may have been a departure from true policy, under the circumstances in which we are placed—but it would be a more dangerous innovation, and a wider departure from true policy *now* to disturb it. 2 Cran. 22 ; 1 Ohio, 1.

Judgment for the plaintiff.