DANIEL P. LYNCH for the use of JAMES NOBLE *against* GEORGE DEARTH.

IN ERROR.

J. sold a house and lot to R., by articles of agreement, and delivered the possession, upon receiving one half of the purchase money: J. afterwards brought an ejectment to compel the payment of the balance, and recovered a judgment, to be released on the payment of the money within nine months.

After the lapse of nine months N. obtained a judgment against R. Subsequently J. took out a *hab. fas. pos.* which was put into the hands of the sheriff; when D. loaned to R. a sum of money sufficient to pay J. J. then delivered a deed to R. which had been previously executed, for the house and lot, and R. immediately executed a mortgage to D. to secure the money so advanced by him. The house and lot was afterwards sold upon the mortgage, for a sum insufficient to pay both N's. judgment and D's mortgage. *Held:* That N's. judgment was entitled to priority.

WRIT of error to the Common Pleas of *Fayette* county.

This was an amicable action to try the right to the proceeds of a sale by the sheriff, in which the plaintiff in error was the plaintiff below. The following facts were agreed to by the parties, and considered in the nature of a special verdict:

On the 26th day of September, 1815, *John Johnston* sold to *Thomas Rhoads* a house and lot, and a vacant lot in the borough of Brownsville, for the consideration of sixteen hundred dollars, $800 of the purchase money, by the articles of agreement, were to be paid on or before the first of April, 1816, at which time possession was delivered; the residue in two annual payments from first of April, 1816. The first payment was made according to contract. On the second day of November, 1819, *Johnston* executed a deed of conveyance, pursuant to the articles, and

on the 10th day of January, 1820, the deed was delivered to *Rhoads*, and *Johnston* received the balance of his purchase money: and on the 19th day of January, 1820, the deed was recorded in the office for recording of deeds in said county.   On the 14th day of December, 1819, *Steven C. Stevens*, for the use of *James Noble*, obtained a judgment against said *Thomas Rhoads*, in the Court of Common Pleas of said county, No. 192, of August term, 1818, for the sum of seven hundred dollars, with interest from the 24th May, 1818: on which an execution issued, a *fi. fa.* No. 53, of March term, 1820; and the property above specified was levied on.

On the tenth day of January, 1820, *George Dearth*, loaned to *Thomas Rhoads* the sum of one thousand and ten dollars, and at the same time *Rhoads* executed to him a deed for the property above named; but it was understood and agreed between *Rhoads* and *Dearth*, that the deed thus given was to secure the payment to *Dearth* of the one thousand and ten dollars, and interest, within four months, and if not paid at that time *Dearth* was to make his money out of the property.   The money got of *Dearth* was to be paid to *Johnston*.   That *Johnston* and his attorney met *Dearth* and *Rhoads* at *Col. Brashears'* in Brownsville, on the said tenth January, 1820: that *Dearth* gave the sheriff of Fayette county, (who was present there with writs of *hab. fa.*, under a proceeding in the Court of Common Pleas of Fayette county, by *Johnston* against *John* and *James Auld*, and *William Rhoads*, tenants of said *Thomas Rhoads*, to recover possession of said property,) a check on the bank of Brownsville for the sum of $1,010, which was paid: and *Johnston* received his money, and the sheriff did not give possession to *Johnston*, and no further proceedings were had by the sheriff on the writ last aforesaid. The money was paid to *Johnston*, and the deed from him to *Rhoads* delivered to *Rhoads;* and at the same time and place *Rhoads* executed the deed to *Dearth*, and delivered to *Dearth* the deed received from *Johnston*, and the one executed by himself.   *Johnston* knew that the money he received as the balance due him on the property sold to *Rhoads*, was furnished by *Dearth;* but *Johnston* was no party to the arrangement between *Dearth* and *Rhoads*.

*Johnston* had refused to make a deed to any other person than *Thomas Rhoads*—was himself anxious to get the property back under his proceedings in the Common Pleas, before referred to: and was willing to throw every difficulty in the way to prevent *Rhoads* from getting the money, with which to pay him.   He had offered at the time of the trial of the ejectment between *Rhoads* and *Johnston*, to refund to *Rhoads* the money he had received on the article; but this *Rhoads* declined.   An amicable

(Daniel P. Lynch *v.* George Dearth.)

*sci. facias*, No. 135, of March term, 1822, by agreement between *Dearth* and *Thomas Rhoads*, was entered, and founded on the deed from *Rhoads* to *Dearth*, which was considered a mortgage by them ; and a judgment confessed on the 12th February, 1822, for the sum of $1,136 35, on which a *levari facias* was issued to October term, 1822, No. 143, and the property aforesaid was sold: the house and lot to *George Dearth*, for $850: the other parcel to *William Hogg*, for 60 dollars. The sheriff executed a deed to *Dearth* for the house and lot, but received no money ; said *Dearth* claiming to hold it on his own claim against *Rhoads* as aforesaid ; *Rhoads* never having repaid him the money. If, from the foregoing statement, the Court should be of opinion that the plaintiff is entitled to have judgment entered in his favour, then it is to be entered, that he recover of the defendant, eight hundred and fifty dollars, with interest thereon, from the first day of November, 1822, besides costs of suit, otherwise judgment to be entered for the defendant generally."

In addition to the foregoing statement, these facts, which might seem to be material, appeared from the papers exhibited, that in the action of ejectment by *Johnston* against *Rhoads*, to compel the payment of the balance of the purchase money, a judgment was obtained by the plaintiff, on the 4th of March, 1819, to be released on the payment of the money in nine months, which expired on the 4th December, 1819, and before *Noble* obtained his judgment.

The Court below gave judgment for the defendant.

*Kennedy* for plaintiff in error, being absent, submitted the following written argument.

In order to shew that *Noble's* judgment is entitled to a preference, I will first notice all those cases and principles upon which I suppose that the defendant's counsel will endeavor to prove the converse of this proposition. I think that I may venture to assert that the defendant's counsel can produce no case similar to the present in which a decision has been given favorable to their side of the question. And I will further undertake to shew that all the cases which they may refer to, and think have a bearing on the matter in controversy, are quite different from the present, and that the principles, upon which they were decided, will not support their client's claim in this case. . It is possible that they may rely on the case of *Holbrook* v. *Fenney*, in 4 *Mass. Rep.* 566, where the father, by deed, in consideration of £400, conveyed the land to his four sons, who, by deed of the same date, and in pursuance of a previous agreement made for that purpose between them, mortgaged the same land to their father, in fee,

(Daniel P. Lynch *v.* George Dearth.)

to secure to him the payment of the £400, with interest, &c.
These two deeds being executed at the same time, under a pre-
vious agreement, were considered by the court "as parts of one
and the same contract between the parties." See page 569. How
very different is the case submitted to the Court? In it, the deeds
from *Johnston* to *Rhoads* and from *Rhoads* to *Dearth,* though
delivered on the same day, were not signed and sealed on the
same day—the deed from *Johnston* to *Rhoads* was signed, sealed
and acknowledged by *Johnston* and his wife upwards of a month
before the signing and sealing of the deed from *Rhoads* to *Dearth.*
Neither were they executed under the *same contract.* The deed
from *Johnston* to *Rhoads* was executed in pursuance of an agree-
ment between *Johnston* and *Rhoads,* made many years before, to
which *Dearth* was no party, and of the making of which he had
no knowledge. But the deed from *Rhoads* to *Dearth* was exe-
cuted in pursuance of an agreement, made on the day of its date,
between *Rhoads* and *Dearth* to which *Johnston* was no party, and
after *Johnston* had refused peremptorily to make a deed to *Dearth*
or any other than *Rhoads.* It is, therefore, impossible to say as
Chief Justice *Parsons* said, in the case of *Holbrook* v. *Fenney,*
"that these two deeds are parts of one and the same contract be-
tween the parties."—It must be observed that, in *Holbrook* v.
*Fenney,* the parties to both deeds were *the same,* and the words,
"the parties," used thus necessarily, means *the same parties.* The
case of *Chickering* v. *Lovejoy, et al.,* 13 *Mass. Rep.* 51, is in
substance the same with *Holbrook* v. *Fenney.* The deeds from
*Witherington* to *Wilcox* and from *Wilcox* to *Chickering,* were
executed in pursuance of the *same agreement* to which these three
were parties. The agreement is stated in page 52: there was but
one agreement; it is impossible to make two out of what is there
set forth; and, under that one agreement, both deeds were exe-
cuted, and done at the same time between the same parties.
Hence Justice *Wild,* page 55, in pronouncing the opinion of the
Court, says, "these deeds must be considered as parts of the same
contract." So, in the case of *Stow* v. *Tifft,* 15 *Johns. Reps.*
458, the two deeds were executed at the same time between the
same parties, under one and the same agreement. It is the same
case *quatuor pedibus* with *Holbrook* v. *Fenney,* and *Spencer*
*Justice,* who delivered the opinion of the Court, adopts the same
language of Chief Justice *Parsons,* "that when a deed is given
by the vendor of an estate, who takes back a mortgage to secure
the purchase money at the same time that he executes the deed,
that then the deed and the mortgage are to be considered as parts
of the same contract, as taking effect as the same contract, and as
constituting but one act; in the same manner as a deed of defea-
sance forms with the principal deed, to which it refers but one

(Daniel P. Lynch *v.* George Dearth.)

contract, although it be by a distinct and separate instrument." The basis of all these decisions is, that the execution of the several deeds was done in pursuance and in performance of one and the same contract, between the same parties, at the same time. Unity of time, contract, and parties, seems to be of the very essence of the principle upon which these decisions have been made; whereas, in the case presented to the court, all these unities are wanting, with the exception of the delivery of the deeds. They were delivered at the same time and place, or nearly so. First, *Rhoads* receiving his deed from *Johnston*, and immediately after delivering it over with his own deed to *Dearth*. But this happened not in pursuance of any one agreement between these persons, but because *Johnston* would not deliver the deed he made to *Rhoads* until he had received his money, and *Rhoads* could not pay the money until he received it from *Dearth*, with whom he had made an arrangement to get it, but *Dearth* was not willing to trust *Rhoads* with the money out of his sight, and to receive of him, at another time, the mortgage, after *Rhoads* should have got his deed from *Johnston*, lest he might misapply the money, and therefore *Dearth* accompanied *Rhoads* when he came to pay the money to *Johnston*. It is manifest *Johnston* delivered the deed he made to *Rhoads*, *exclusively* under a contract between him and *Rhoads*, made years before, and *Rhoads* made and delivered his deed to *Dearth* under a contract, *exclusively* between themselves, made on that day.

If the foregoing cases had any bearing upon the question now presented to the Court, which I think they have not, I might observe, that they are decisions of no binding authority on this Court, and that they are in opposition to the decision of the Court in *Nash* v. *Preston*, *Cro. Car.* 190, which is of authority that is binding upon this Court. There was a bargain and sale of the land to the husband for £120, in consideration that the bargainor should redemise it to the vendor, and his wife during their lives, and with a condition that if they repaid the £120 at the end of 20 years, the bargain and sale should be void; he redemised accordingly, and the wife of the vendee held entitled to dower. Now it is clear that this case cannot be distinguished from the New York and Massachusetts cases. It is true, that *Coke* says a wife shall not be endowed of a seizin for an instant, *Co. Lit.* 31, *b.* So *Blackstone* in his *Commentaries*, 2 *vol.* 131, speaks of an *instantaneous* seizin of the husband as being insufficient. But when we refer to the examples given as illustrative of this proposition, they are all cases in which the husband was not intended to have any real, substantial, or beneficial interest, but used as a mere conduit to pass the estate from one to another. As in *Cromwell's* case, 2 *Co.* 77, where by a fine, land was granted to

14

(Daniel P. Lynch *v.* George Dearth.)

a man, and he, immediately, by the same fine, rendered it back again, such seizin did not entitle his wife to dower. See, also, *Preston on Estates—title Dower.* He explains this instantaneous seizin, and considers the wife entitled to claim dower when her husband has had seizin, although but for an *instant,* if it was *beneficially for his own use.* That *Rhoads* was seized, and seized too beneficially for his own use, the instant that *Johnston* delivered the deed to him or his attorney, cannot be denied, I think, such a seizin would be sufficient to entitle his wife to dower ; and, if so, would give *Noble's* judgment a preference to *Dearth's* mortgage, as I shall shew in the sequel.

The case also which happened in Wales, and is mentioned in *Cro. Eliz.* 503, supports the idea that a seizin, though it be for a mere *instant,* yet if accompanied by an *interest,* it will be sufficient to entitle the wife to dower. There, the father and son, were joint-tenants, and they were both hanged at the *same* moment, out of the *same* cart, but because it was thought that the son probably died a second or two after the father, as was supposed from his shaking his legs the last, his wife was entitled to dower. The wife only of the longest liver of two joint-tenants is entitled to dower, because the survivor alone can be said to be seized, and yet in this case the seizin could have been merely *instantaneous,* but it was accompanied by a *real, substantial interest* in the husband, and was therefore sufficient. This distinction reconciles all that is said in our English law books on this point.

Now let us examine the case presented to the Court for decision, in connection with the decisions and opinions of the Courts and judges of Pennsylvania, in relation to the same subject. The lien of judgments has been extended in this state beyond the limits of the common law. A judgment is a lien on every kind of *equitable interest in land, and every kind of right* vested in the debtor at the time of the judgment. *Carkhuff* v. *Anderson, 3 Binn. Rep.* 589. *Ely* v. *Beaumont,* 5 *Serg. & Rawle,* 124. In the first case here referred to, the plaintiff *Carkhuff* claimed the land under a purchase at sheriff's sale, upon a judgment against one *Craig,* who had a bare presumptive right to the land at the time the judgment was obtained. He was a Connecticut claimant of the land, and under an act of the legislature of this state passed 4th April, 1799, was entitled to have it in fee, *upon his paying* a certain sum of money to the state, provided the Pennsylvania claimant of the same land should release it to the state. *Craig* did not pay this sum of money or any part of it, but some time after the entry of the judgment under which the land was sold, he, by deed, conveyed or assigned his right to the land to *Anderson,* the defendant, who paid the money to the state,

(Daniel P. Lynch *v.* George Dearth.)

and obtained a patent in his own name. Now, it must be admitted that the commonwealth, after the Pennsylvania claimant had released to her, had not only the legal title to the land, but the right to retain it until *Craig*, or those standing in his shoes, paid the money due to her for the land, and that the claim and lien of the state was paramount and prior to that of the judgment-creditor; yet the Supreme Court decided that as soon as *Anderson* the assignee of *Craig*, paid the money due to the state for the land, that the lien of the judgment immediately attached upon the whole united, equitable and legal interest in *Anderson*, because *Anderson* was the assignee of *Craig*, the judgment debtor. Yet in point of fact and in law, when he obtained the patent from the commonwealth, he was also the assignee of the commonwealth as to the legal title, and all the right of the commonwealth, which was a right to money. But the equitable interest seems to have prevailed over the legal, and that as soon as the legal title was united to the equitable, either in the person of the judgment debtor, or his assignee, the lien of the judgment attached upon and embraced the *whole*. See also *Richter* v. *Selin*, 8 *Serg. & Rawle*, 440–1. *Justice Yeates*, in *Calhoun* v. *Snyder*, 6 *Binn*. 147, in reasoning against the inconvenience and injustice that would arise from judgments binding *after purchased* lands, says, "As to the seller, he is not rendered secure as to his consideration money, by taking either a mortgage or a judgment. The estate must necessarily be for a moment in the buyer, before he can execute a valid mortgage, or confess a judgment, which may become a lien on the property bought; but *eo instanti* that the conveyance by the seller is sealed and delivered, the lien of the old judgment against the buyer attaches as the inevitable consequences of the doctrine contended for. There would be serious evils, &c. No other mode for the security of the vendor presents itself to me, where the old judgments have been searched for, except a conveyance of the lands subject to the payment of the consideration money, so that the estate *cum onere* should vest in the vendee at the same moment." So *Justice Brackenridge*, in the same case, page 157, says, "I cannot comprehend how they manage matters in England, as, on this principle, a case must be supposed sometimes to occur, where a vendee, against whom there is a judgment, takes a grant and gives a mortgage in security of payment; it must be that no man can purchase, against whom there is a judgment, and give such mortgage, for the judgment must intercept the mortgage and cut it out. There is, &c. In the order of time, as in contemplation of law, there must be a priority. The taking the grant in the first instance, and then the conditional regranting, cannot be concurrent acts, or considered as such." Here we have the opinions of those two learned judges expressed, after full and

(Daniel P. Lynch *v.* George Dearth.)

mature deliberation, in direct opposition to the principles contained in the decisions of the Supreme Courts of New-York and Massachustts.   They say, in so many words, that if it were the law of Pennsylvania, that a judgment bound after purchased lands without execution, it would be impossible for the vendor, by any arrangement that he could make with the vendee, to make a deed of conveyance to the purchaser, and to secure by mortgage, judgment, or otherwise, the purchase money, or any part of it, by a lien upon the land, in preference to the prior judgment, unless it were, as *Judge Yeates* says, to convey the land expressly subject to the payment of the consideration money, or such part of it as might remain unpaid.   Of consequence, if the purchaser were a married man at the time of his purchase, upon the same principle as the judgment, the inchoate right of the wife to dower would intervene *eo instanti* the deed of conveyance was made to the purchaser, and cut out the mortgage given to secure the purchase money, although given under the same agreement, and at the same time with the conveyance.   Hence the decisions of the Supreme Court of Pennsylvania, as well as the opinions of the judges of that Court prove, that the instantaneous seizin of the husband, spoken of by *Coke & Blackstone,* as being insufficient to give the wife a right to dower, must mean a *mere naked momentary seizin,* unattended with any kind of *interest.*   Such too is the opinion of *Justice Thompson,* as expressed by him in the case of *Stow* v. *Tifft,* already cited, 15 *Johns.* 464, where he dissented from the opinion of the Court   .Although it may be possible, upon the principle of the rule, which appears to be well established, which is "That all the several parts and ceremonies, necessary to complete a conveyance, shall be taken together, as one act; and operate from the *substantial* part *by relation,*" 5 *Burrows Rep.* 2787, to sustain the decisions of the Supreme Courts of New-York and Massachusetts, yet they are made in cases very different from the one now presented to this Court for its decision.   The deed made by *Johnston* to *Rhoads* had no connection in fact, or by agreement with the deed made by *Rhoads* to *Dearth.* They were different acts, under different arrangements, between different parties, and not *parts* of the *same* conveyance, as the rule expresses it.   Suppose *Dearth,* instead of taking a deed of mortgage from *Rhoads,* had taken a judgment-bond to secure the repayment of the $1010, and entered it up in the prothonotary's office, could it be pretended that such a judgment would have a preference to the judgment in favor of *Stevens* for the use of *Noble;* I apprehend not. Yet it is well settled by a series of decisions of the Supreme Court of this state, that a mortgage is merely a security for the payment of the debt, and that the mortgagor is still to be considered, not only as seized of the land mortgaged, but the owner of

(Daniel P. Lynch *v.* George Dearth.)

it. That the mortgage upon the death of the mortgagee, passes to his personal representatives. His administrator may assign it, and the assignee maintain ejectment for the land. That a woman marrying a man who has mortgaged his real estate in fee-simple upon his dying is entitled to dower, *Lessee of Simpson'*v.*Ammons,* 1 *Binn.* 175. *McCall* v. *Lenox,* 9 *Serg. & Rawle,* 302. *Wentz* and *wife* v. *Dehaven,* 1 *Serg. & Rawle,* 312. So a mortgage may be released by parol, *Martin* v. *Maivlin,* 2 *Burr.* 979, which could not be, were it of the nature of land or real estate: it is a chose in action, a debt, and cannot be taken in execution as the property of the mortgagee. *Jackson* v. *Willard,* 4 *Johnson Reps.* 41. The mortgage, at most, can only give a right to the possession of the land, and a right to receive the rent, issues, and profits in payment of the debt. In this respect it is different from a judgment, but in no other. They are both mere securities for the payment of moneys, or some collateral act to be done, &c. If so, upon what principle is it that *Dearth* shall have his mortgage preferred to *Noble's* judgment? I see none, and I feel persuaded no case can be found to support his claim to the money arising from the sheriff's sale of the property, in preference to *Noble's* under the prior judgment in favour of *Stevens* for his use.

*Austin* and *Ewing* for defendant in error.

*Johnston* having obtained a judgment in ejectment against *Rhoads,* to compel the payment of the purchase money within nine months, the money not having been paid within that period, the judgment became absolute, and *Rhoads'* title re-vested in *Johnston,* before *Noble* obtained his judgment. There was, therefore, no title either legal or equitable in *Rhoads,* upon which the lien of that judgment could attach. The plaintiff has no equitable claim to the money, and clearly has no legal right to it.

*Johnston* being about to take the possession of the property, on the *hab. fas. poss.,* to which he had then the legal and equitable title, agree to give up this title, upon being paid the balance of the original purchase money. *Dearth* pays the money, and takes a conveyance to himself, through *Rhoads;* and for the purpose of enabling him to redeem the property at a future period, the parties agree that the deed from *Rhoads* to *Dearth* shall be considered a mortgage. If the deed had been made directly from *Johnston* to *Dearth,* there would have been no room to doubt but that it would have vested in him the whole title. Or if *Johnston* had actually taken possession of the house and lot, on his execution, and had then conveyed it directly or indirectly, as he did, to *Dearth,* no difficulty could have arisen about the title. *Noble,*

(Daniel P. Lynch *v.* George Dearth.)

therefore, having no *legal* right to recover in this case; and having no superior equity, shall the mere form, by which the design of the parties was carried into effect, prejudice the interest of any one of them.

· If the legal and equitable title was in *Johnston* at the time, the mere fact of the deed having been made to *Rhoads* will not better the plaintiff's case; there was no time for his lien to attach: the deed from *Johnston* to *Rhoads*, and from *Rhoads* to *Dearth*, was all the same transaction; and mainly calculated for the benefit and security of *Dearth. Stow* v. *Tiffit*, 15 *Johns. R.* 458, and the cases there cited. *Clark* v. *Munro*, 14 *Mass.* 351.

· Equity will consider *Rhoads* in the light of a trustee for *Dearth* who paid the money. *Jackson* v. *Sternbergh*, 1 *John. Ca.* 153. *McDougal* v. *Sitcher*, 1 *Johns. R.* 45. *Foote* v. *Colvin*, 3 *Johns. R.* 216. *Jackson* v. *Matsdorf*, 11 *Johns. R.* 91. *Jackson* v. *Mills*, 13 *Johns. R.* 463. *Jackson* v. *Morse*, 16 *Johns. R.* 197. *Moody* v. *Vandyke*, 4 *Binn.* 31. 1 *Haywood's Rep* 121. *Chew* v. *Burnett*, 11 *Serg. & Rawle*, 389.

The defendant offers to convey the property to the plaintiff, upon his paying him the $1,010, without interest.

*Dawson* in reply:

Did not deny the position, that there was no time between the acts done, at the time of the execution of the deeds, for the lien to attach: but contended, that *Noble's* judgment was a lien upon the equitable title which *Rhoads* had, and of which he never was divested, that the transaction between *Rhoads*, *Johnson* and *Dearth*, was the ordinary one of a vendee's borrowing, to pay a balance of purchase money, so as to obtain the legal title, and then giving a mortgage to secure the money borrowed. As to the title being absolute in *Johnston*, after the lapse of nine months from the judgment in ejectment, the parties themselves did not so consider it, or *Johnston* would not have yielded a right which he was so anxious to obtain.

The opinion of the Court was delivered by

SMITH, J.—The question, presented to this Court for their decision, in this case, is, whether the judgment of the 14th of December, 1819, in favour of *Steven S. Stevens*, to the use of *James Noble*, against *Thomas Rhoads*, for 700 dollars, ought to be paid, in preference to, or before the mortgage given by him to *George Dearth*, on the 10th of January, 1820. A majority of this Court, is of the opinion, that this case cannot be distinguished from the opinion of our courts, heretofore delivered on this subject. In Pennsylvania, it has been long settled, that the lien, created by judgments, extends beyond the limits of the common law, and that

(Daniel P. Lynch *v.* George Dearth.)

here, a judgment is a lien on every kind of *equitable interest in land,*—it is a lien, *on every kind of right, vested in the debtor at the time of the judgment,* which can be sold, and on the *venditioni exponas* the sheriff sells and conveys all his right, whatever it may be. So was the decision of this Court, in *Carkhuff* v. *Anderson,* 3 *Binn.* 4. This principle was afterwards followed up, by a very able Judge, when President of the Court of Common Pleas of Bucks county, whose judgment on a writ of error, the Supreme Court of this state afterwards recognized and affirmed without hesitation, in the case of *Ely* v. *Beaumont,* 5 *Serg. & Rawle,* 124. And in the case of *Richter* v. *Selin* 8 *Serg. & Rawle,* 440, Judge Duncan, in delivering the opinion of this Court, repeats the same principle, when he says, a judgment binds every equitable interest which the debtor has at the time of the judgment. In the case before us, *Rhoads* had an equitable interest in the land on the 1st of April, 1816, when he made the first payment of 800 dollars to *Johnston,* according to his contract with him, under their written articles ; there was then at least, an inception of a title in him, such as a Court of Chancery would give effect to, and which might be bound ; and he afterwards, on the 10th of January, 1820, paid the whole of the purchase money, and received his deed from *Johnston,* and the equitable and legal title being thus completely united, the judgment attached and bound the united interest. But the cases in 4 *Mass. Rep.* 566, and 13 *Mass. Rep.* 51, have, in the course of the argument, been pressed upon our attention, as decisive of this case. In the first recited case, it appears, that a father conveyed land to his four sons, in fee simple, who by deed of the same date, mortgaged the land to the father, to secure the payment of a sum of money, and also to maintain him for life, it was held, that the two deeds were parts of the same contract, and as taking effect at the same instant ;—now a moment's reflection, may teach us, that the case submitted to this Court, for its decision, is very different from the case cited. The deed from *Johnston* to *Rhoads,* and the mortgage from *Rhoads* to *Dearth,* were not signed and sealed on the same day, although *delivered* on the same day. The deed from *Johnston* to *Rhoads* was signed, sealed and acknowledged by *Johnston* and his wife, on the 2d of November, 1819 ; the deed from *Rhoads* to *Dearth,* on the 10th of January, 1820. But they were not, as the deeds in the Massachusetts' cases, executed under the same contract. The one from *Johnston* to *Rhoads* was executed, in pursuance of a contract between *Johnston* and *Rhoads,* entered into on the the 26th of September, 1815, of course long before the other, and to which contract, *Dearth* was no party, and of which, he, at the time of entering into it, had no knowledge; but the mortgage from *Rhoads* to *Dearth* was

executed pursuant to an agreement made between *Rhoads* and *Dearth,* on the 10th of January, 1820, and to which, be it remembered, *Johnston* was no party ; but he had constantly refused to make a deed to *Dearth,* or to any other than *Rhoads* himself.     It was therefore well observed, by the counsel for the plaintiff in error, that it cannot be said here, as the Court in Massachusetts said, that these two deeds are parts of one and the same contract, and between the same parties.     And so in the other case in 13 *Mass. Rep.* 51, and in the case from 15 *Johns.* 458, in which it will be found, the deeds were at one and the same time, between the same parties, under one and the same agreement.     To me, it is manifest, that *Johnston* delivered the deed he made to *Rhoads,* exclusively, under a contract between him and *Rhoads,* made many years before ;—but that *Rhoads* made and delivered his deed to *Dearth,* under a contract exclusively between themselves, made on the 10th of January, 1820. The cases then, cited by the defendant in error, do not apply to this case, nor do they decide it.     The case of *Calhoun* v. *Snyder,* in 6 *Binn.* 147, is supposed to militate against the decision we are about to make in this case.     But it does not.     We are not about to decide, that the judgment of *Stevens* to the use of *Noble,* is binding on after-purchased lands.     The equitable interest of *Rhoads* in the land, which we decide to have been bound by this judgment, was acquired on the 1st of April, 1816,—the judgment was obtained on the 14th of December, 1819, this we think bound that interest ; indeed, in regard to that case, I say, with the late *Judge Duncan,* "The case has been decided, and the question is at rest, and I would not therefore be understood, as throwing out any thing to undermine its authority."     The judgment of the Court of Common Pleas on the case stated, is therefore, to be reversed, and instead thereof, judgment to be entered for the plaintiff, to recover of the defendant 850 dollars, with interest thereon, from the 1st of November, 1822, with costs of suit.

HUSTON, J.—On the fullest reflection I cannot agree with the majority of the Court.

*Rhoads* had purchased by articles of agreement, and had paid $800, and had an equitable title to the property for so much. This equitable interest was the subject of levy and sale, and on it the judgment of *Stevens* attached, and no more.     The legal title, and the residue of equitable interest, remained in *Johnston,* and on this *Stevens* had no lien.     *Dearth* paid the balance of the purchase money to *Johnston,* and got the legal title.     It matters not that it went through *Rhoads*—it was in him but an instant. Though the deed from *Johnston* to *Rhoads* had been executed

some weeks, it was not delivered until 10th January, 1820; and that instant *Rhoads* executed a deed to *Dearth,* who had paid the money to *Johnston* for him.    By a parol agreement or a deed of defeasance, this deed from *Rhoads* to *Dearth* was in fact a mortgage: this mortgage was sued, and *Dearth* purchased the land. He claims to stand in *Johnston's* place—to hold the legal title and balance of purchase money; and offers to convey to the other party, on being paid what was due to *Johnston* by *Rhoads.*

It is well settled, that the interest of *Johnston* could have been sold at private sale, or levied on and sold by the sheriff; and in either case the purchaser would have had all his rights, and been subject to the right of *Rhoads.*

Where property passes through a man, without his having paid for it, no right vests in him—it is never his in contemplation of law, 4 *Mass.* 566; 14 *Mass.* 351; 15 *Johns.* 458, and the cases there cited.

But suppose it did vest in him; it remained there but an instant, and was sold to *Dearth.*    I never liked the case of *Calhoun* v. *Snyder,* in 6 *Binn.* 147, but it has been so long decided, so often recognized, and so much property is held under it, that we cannot disturb it; and by that case, the judgment of *Stevens* did not attach on that after-purchased interest, unless it was levied on while in *Rhoads.*    It was not levied on, and the judgment of *Stevens* only bound, as before, the equitable interest of *Rhoads,* i. e. to the amount of $800, and never bound the remaining equity, nor the legal title.    *Dearth* has that legal title, and that residue of equitable interest.

As a question of sheer law, the owner of the legal title is safe, he cannot be disturbed.    If the plaintiff asks equity, he must do equity.    Suppose *Dearth* had never interfered; *Johnston* would have obtained possession, and held against *Rhoads,* or whoever purchased the interest of *Rhoads,* until the residue of the purchase money was paid.    Why shall not *Dearth,* who paid *Johnston* all that was due, and has all the right which *Johnston* had, also hold till he is paid?

Could *Rhoads* ever have compelled *Dearth* to give up possession till he paid him? or could he have compelled *Dearth* to repay him what he had already paid? and why shall the man, who, with full knowledge of all the circumstances, has purchased the interest of *Rhoads,* do what *Rhoads* could not have done?

When a man, having good title, sells by articles of agreement, receives part of the money, and is ready and willing to make a good title to his vendee, on receiving the residue of the purchase money, it is not in the power of that vendee, or any person claiming through him, to rescind the contract—refuse to comply on

his part, and compel the vendor to pay back what he has receiv-
ed, and keep the land; and yet that is, in effect, what is asked in
this case.

Judgment reversed, and judgment for the plaintiff.