Mr. Chief Justice Johnson delivered the opinion of the Court, The counsel for the appellants have submitted three distinct questions for our consideration and decision: First, is a judgment a lien on a reversion in real estate; 2d, does a judgment become a lien on after acquired lands; and 3d, is the lien of a judgment so continued by execution and levy, when the execution comes to hand before the lien expires, but the sale is after the lien expires, that the sale relates to the date of the judgment, or- does it only relate to the day when the execution came to' hand. The 25th sec. of chap. 67, of the Digest, after enumerating a, great variety and numerous kinds of property which by it were-. subjected to seizure and sale under any execution upon any judgment, order or decree of a court of record, concludes by declaring the same thing in respect to all real estate, whether patented or not, whereof the defendant or any person for his use was seized in law or equity on the day of the rendition of the judgment, order or decree whereon execution issued, or at any time thereafter. The 79th sec. of the chapter, defines the term “real estate” as used in that act, and declares that it shall be so construed as to include all estate and interest in lands, tenements and hereditaments. A reversion is the return of land to the grantor and his heirs, after the grant is over; or, according to the formal definition in the New York Revised Statutes, it is the residue of an estate left in the grantor or his heirs, or in the heirs of a testator commencing in possession on the determination of a particular estate granted or devised. It necessarily assumes that the original owner has not parted with his whole estate or interest in the land, and therefore if he grants land in tail, or for life, or years, he has an interestin the reversion, because “he hath not departed with his whole estate.” The reversion arises by operation of law, and not by deed or will; and it is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment. It is an incorporeal hereditament, and may be conveyed either in whole or in part by grant without livery of seizin. Reversions expectant on the determination of estates for years; are immediate assets in the hands of the heir; but the reversion expectant on the determination of an estate for life is not immediate assets during the continuance of the life estate, and the creditor takes judgment for assets in futuro. If the reversion be expectant on an estate tail, it is not assets during the continuance of the estate tail; and the reason assigned is, that the reversion is of little or no value since it is in the power of the tenant in tail to destroy it when he pleases. But in Kin-arton v. Clarke. Lord Hardwicke considered it inaccurate to say that such a reversion was not assets: for there is a possibility of its becoming an estate in possession, and the creditor might take judgment against the heir, on that possibility, for assets guando acciderint, and which would operate whenever the heir obtained seizure of the reversion. In the mean time, as it was admitted, the reversion could not be sold nor the heir compelled to sell it; and when it comes to the possession of the heir he takes it cum onere subject to all leases and covenants made by the tenant in tail while he had the estate. The reversioner, having a vested interest in the reversion, is entitled to his action for an injury done to the inheritance. He is entitled to an action on the case in the nature of waste against a stranger while the estate is in the possession of the tenant. The injury must be of such a permanent nature as to affect the reversionary right.” (See 4 Kent’s Com. 353, 4 and 5, and the cases there cited.) It appears from this extract, in which reference is made to the English authorities that a reversion expectant on the estate tail could not be sold nor the heir compelled to sell it, and that when it came into possession of the heir he took it cum onere subject to all leases and covenants made by the tenant in tail while he had the estate. We are fully prepared to admit the correctness of the proposition laid down by Watkins, in his law of descents, and quoted with approbation by Lord Al van ley in the case of Doe v. Hutton, (3 Bos. & Pul. 656,) which is, that “When a reversion or remainder expectant upon an estate of free hold continues in a course of descent, it continually devolves on the death of each particular heir, to the person who can then make himself heir to the donor or purchaser, without any regard to the very heir of the precedent person who succeeded to it by descent, till, when the particular estate is determined, it ultimately vests in possession in him who, at such determination is the right heir of such donor, purchaser or original remainderman.” The reason of this, as he stated it, is, that as there was no intermediate person actually seized of such reversion or remainder, no one could be the mean of turning its descent and becoming a new stock or terminus; but such stock must yet be in the donor, purchaser or remainder-man, and must so continue if no alienation be made till such estates shall become vested in possession. It is conceded that such was the law in England at the time of the delivery of the opinion in the case of Doe v. Hutton, already referred to, and whether it is still the law here, or, whether it has been charged by our act of descents and distributions, we do not deem it material to decide. The fact of a reversionary interest being transmissible or not by the mere force and operation of the law of descents, cannot settle the question here involved. True it is that in case of doubt the principle referred to might throw some light upon it by way of analogy, and inferences of more or less force might be drawn from it, and this is the most that could be derived from that source. This principle of the law in relation to descents as it stood at that time, even admitting it in its fullest extent, could have no application to the question before us, since the current has been turned by the conveyance of the reversioner of all his interest in the estate to Watson, who is a stranger to the old stock or terminus. In respect to Henry Cheatham’s power thus to alienate his T'eversioii'ary interest in the lands to Watson, before the determination of the particular estate, there cannot exist a single doubt. 1 The course of descent as pointed out by the authority already referred to, was upon the express condition that no alienation had been made before the estate became vested in possession. (See Doe v. Hutton, 657.) Indeed it is expressly said in that case, “If a man purchase a reversion only, be is never actually seized at all, and yet his heir would be entitled. In Hale’s Mss., cited in the notes to Hargrave and Butler’s Co. Litt. 14, as it is said, “if A purchase a reversion expectant on an estate for life and dies without issue, regularly his brother of the half blood shall not-be heir to him, because though where there is á mesne seizure he ought to make himself heir to him who is last actually seized,yet w^hen there is not such a mesne seizure, he ought to make himself heir to him in whom it first vests by purchase.” According to the authorities therefore, the interest of Cheatham, the reversioner, having passed to, and vested in, Watson by purchase, and that too before the determination of the particular estate, without alienation by Watson, would have descended to his lawful heirs, and that too whether he were living or dead at the time of~the determination of the particular estate. The question here to be decided is whether a reversion expectant on the determination of an estate for life, after a sale by the reversioner, is subject to execution to satisfy a judgment against the purchaser? Is it an estate orinterestin lands, tenements, or hereditaments, or was Watson seized of such estate or interest either in law equity? Chancellor Kent, in the 4th volume of his commentaries, at page 354, says, “The reversion arises by operation of law, and not by deed or will, and it is a vested interest or estate, inasmuch as the person entitled to it has a fixed right of future enjoyment. It is an incorporeal hereditament, and may be conveyed either in whole or in part, by grant, without livery of seizin. It is the residue of an estate left in the grantor or his heirs, m in the heirs of a testator, commencing in possession on the dqtrermination of a particular estate granted or devised. It necessarily assumes that the original owner has not parted with his whole estate orinterestin the land, and therefore if he grants land in tail or for life or years, he has an interest in the reversion, because “he hath not departed with his whole estate.” It is clear and incontrovertible that a reversion is a hereditament, and it would be absurd to say that a party could be the so.le proprietor of such hereditament, and have a vested interest or estate in the same, and yet neither seized in law or equity. It is readily conceded that neither Henry Cheatham, before the sale to Watson, nor Watson after such sale, was actually seized and possessed of the reversion; but it must be obvious to every one that they were both in their turn seized in contemplation of law. The fee had never passed out of Henry Cheatham until the sale to Watson, and the only disability under which he labored, was a want of power to enjoy the estate itself during the existence of the particular estate. The case of Whitney v. Whitney, 14 Mass. 88, and Benton v. Smith et al., 13 Peters 464, are in point, and indeed may be admitted as conclusive of the question. In the latter case, the Supreme Court of the United States said, “Now in Comyn's Digest, title Grant, E. 2,' it is said that by grant of all lands and tenements a reversion passes. In the same book, title Estate, B. 12, it is said, if a man grant the land itself, the reversion passes. So, in Moore's Reports 36, a reversion falls within the terms, land and tenements. But the party must have been seized at the time of obtaining the judgment; or afterwards. Now let us see what is meant by the seizure spoken of in the statute. And the authorities are clear, that it is not confined to actual corporeal possession. In Gilbert on Executions, pages 38-39, it is said that the judgment binds not only the lands and tenements of which the defendant is actually seized, but also the reversions or leases for lives as well as for years; for although the words of the elegit are, that without delay you cause to be delivered a moiety of all the. lands and tenements of which the aforesaid B. was seized &c., yet the intent of the writ extends to whatever lands and tenements were actually vested in the defendant; because the statute is a moiety of the land, which extends to reversions which are comprised under the name lands, since they are lands returning to the defendant when the particular estate ceases. So, in 2 Williams' Land 68, it is said, judgment binds not only lands of which defendant is actually seized, but also reversions or leases for lives or years; and therefore a moiety of a reversion may be extended, and plaintiff will have a moiety of the rent. So, in Chitty on Descents 338, it is said, that if judgment be had in the debtor’s life time, it will bind the property, though no execution be taken out till the property, descends to others. Nay, in case of a judgment, it is said to bind, even where if is against a person from whom the estate .does not immediately descend, as if it were against a remainderman or reversioner, whereas the contrary would be the case of a bond on which no judgment had been rendered in the debtor’s'' life' time, who stood in the same relation. The author last cited, in page 54, quoting Watkins on Descents 40, 41, speaking ef the subject of seizin of reversions, remarks that the confusion seems to have been created by the different meanings which have been attached to the word “seizin,” by being used in a general sense when it should properly have been confined in its acceptation; or by being confined w'hen it should have been taken in a general sense. And in pages 53, 54, he thus sums up the doctrine. We must here remember that the expressions or terms of a seizin in law and a seizin in deed, refer only to the present and actual corporeal possession of the premises, and not to the fixture of an interest which is to come into actual enjoyment in some future event; and here the word “seizin” is used in its strict sense; and though we frequently use the term “seizin” of a remainder or reversion expectant upon a freehold, yet this signifies no more than that the property in them is fixed in the owner, and that such owner is placed in the tenancy. The particular estates and those expectant upon them, form, in law, only one estate, and then the delivery of possession to the person taking first extends to all. All, therefore, may be said to be seized, all being placed in the tenancy, and the property being thus fixed in all. It is upon these principles that the authorities lay down the doctrine that a judgment binds a reversion after an estate for life. We think it clear, therefore, that Watson was seized of such an interest in the lands in question as was subject to execution, and that consequently, the objection to Hubbard’s title, based upon that ground, cannot be 'sustained. The next point presented, relates to the effect of a judgment as a lien upon lands acquired by the judgment debtor subsequently to the time of the rendition of the judgment. Our execution law subjects to seizure and sale “ all real estate, whether patented or not, whereby the defendant, or any person for his use, was seized in law or equity on the day of the rendition of the judgment, order or decree, whenever execution issued, or at any time thereafter.” And the act concerning judgments and decrees declares that judgments and decrees rendered in the Circuit Court shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held, and that liens shall commence on the day of the rendition of the judgment, and shall continue for three years, subject to be revived, &c., and further, that “a sale of lands under a junior judgment shall pass the title of the defendant, subject to the lien of all prior judgments and decrees then in force,” and that the term “real estate,” as used in thak act, shall be construed to include all estates and interests in lands and tenements, whether legal or equitable, liable to be sold under execution. In Pennsylvania, the judgment is a' lien on the lands owned at the time by the debtor. It was decided by the Supreme Court of that State, that the lien of the judgment did not bind after acquired lands until the execution had issued. (6 Binney Rep. 135, in the case of Calhoun v. Snider.) Chancellor Kent, when commenting upon that case, said, “ This distinction is established by the decision in Calhoun v. Snider, in which the antiquity and authority of the rule of the English common law, that a judgment binds after acquired lands, has been ably questioned, though I think not successfully shaken.” The same case was brought under the review of the same court in the case of Pitcher v. Slin, (8 Serg. & Rawle 439,) and although acquiesced in, was by no means approved by the Judges then presiding. The same court said in that case, that “ the instruction of the court «was altogether correct as to the indemnity being rendered ineffectual by the sale on a judgment prior to the conveyance from Gougler. The argument is, that it was land purchased after the judgment, and therefore was not bound by i.t, according to Calhoun v. Snider, 6 Binn. 135. That case has finally settled that a judgment did not bind after purchased lands. The elaborate opinions of Justices Yeates and Brackenridge, never satisfied my mind that, in England, after purchased lands were not bound by a judgment. The authorities on which they relied, appeared to me to prove directly the contrary of the learned Judges’ position; and Mr. Sugden, in his Law of Vendors, (Sugden 340,) a work of deep research and accurate discrimination; considers it always to have been the law, and so understood in practice, that judgments do bind after purchased lands, and consequently affects them in the hands of purchasers. So is the law in Maryland, Ridgely’s exrs. v. Gartrell, 3 Har. & McHenry 449. And in New York, Stone v. Tifft, 18 John. 464. It cannot be doubted, says Spencer, Justice, that a judgment will attach on lands of which the debtor becomes seized at any time posterior to the judgment. And such was the opinion of the Chief Justice of this court in Calhoun v. Snider, 6 Binn. 135, but he rested on a supposed general understanding and usage. And it appears to have been the opinion of Chief Justice Snimjr and Judge Smith, that the doctrine could not be supported upon the principles of the common law, but on a silent practice which prevailed in this State. That case has been decided. I would not, therefore, be understood as throwing out any thing to undermine its authority. The question is at rest. But as I consider the usage an innovation on the law, and not an improvement, I would not push it beyond that case, but would confine the rule most strictly to the point decided, and to the circumstances under which it was established. In this State a judgment binds every equitable interest which the debtor has at the time of judgment. Here the debtor bad an interest under his contract under the written articles; and equity looks upon the things agreed to be done, as actually performed.” The case then went off upon another point, about which there was no doubt, and the court was consequently relieved from the necessity of expressing any further opinion in respect to the opinion of Calhoun v. Snider. The New York statute declares that “judgments and decrees are a charge upon and bind the lands, tenements, real estate and chattels real of the defendant. The statute of this State declares that “judgments and decrees rendered in the Circuit Court shall be a lien on the real estate of the person against whom they are rendered, situate in the county for which the court is held; and that the liens shall commence on the day of the rendition of the judgment? and shall continue for three 3-ears subject to be revived, (fee. The Supreme Court of New York, in the case of Stow v. Tifft, (15 J. It. p. 464) said that it could not be doubted that a judgment would attach on lands of which the judgment debtor becomes seized at any time posterior to the judgment, and nothing could prevent a judgment creating a lien on the subsequently acquired lands of the judgment debtor, but the circumstance that his seizin in the given case was instantaneous! We think that by the rule of construction adopied in that case, as well as by the courts of other States where they have statutes similar in substance to our own, there can be but little doubt but that under ours a judgment of the circuit court will attach on lands subsequently acquired by the judgment debtor, as well as upon those of which he was seized on the clay of its rendition. We are satisfied from a full review of the authorities that such is the legitimate construction of our statute, and therefore we do not hesitate to adopt it, The only remaining question relates to the continuance of the lien after the expiration of three years, which, though it did not occur before the issuance and levy of the execution, yet it did so happen before the sale. It is contended by the appellants’ counsel that the issuance and levy of the fi. fa. before the expiration of the judgment lien did not save it, but that notwithstanding such issuance and levy, the lien was lost by a failure to sell the property within three .years from the rendition of the judgment. In support of this position, he has referred us to the New York authorities. It is conceded that such is the doctrine held by the Supreme Court of that State. (See Tuft's ad. v. Tuft, 18 Wend. 623. 5 Cow. Roe v. Sloart, 294, and others.) But the question here arises as to the applicability of those decisions to our legislation in reference to the same subject matter. The language of their statute, presenting the limitation of the lien of a judgment,, is somewhat different from ours, as it expressly negatives the idea of its extending beyond á certain and fixed period, whereas ours only fixes the period of its commencement and prescribes the time-for its continance without express negative words in respect to its further extension. This difference, however, is perhaps more in letter than in spirit, and whether it is so or not, we do not conceive it material to trace it out, as in no event could it have any important bearing upon the question at issue. The doctrine of those ca-seswhich limits the judgment lien to the period prescribed by the statute under all circumstances, except where the party has been prevented from suing out his execution by some lawful order, we conceive to be the necessary and inevitable result of another, established by the same court, and from which we have dissented. This relates to the force and effect of a levy of an execution upon real estate. That court, in the case of Wood v. Calvin, 5 Mill 230, said “when the judgment is alien upon the land, it is not necessary that the sheriff should make any formal levy or seizure before advertising to sell. It would be an idle ceremony for him to go to the land or make an inventory of it, or do any other act of the like nature. The judgment binds the land, which is already in the custody of the law before the execution issues. The execution comes as a power to enable the creditor to reap the fruits of the seizure already made.” The same principle was laid down by that court in the case of Catlin v. Jackson, (8 John. R. 546.) If an execution were not necessary to enable the sheriff to seize and sell the property, it is perfectly obvious that the mere issuance and levy of such execution could make' no impression whatever upon the lien created by the judgment. The judgment itself having performed the office of a fi. fa., so far as the seizure and levy are concerned, it would necessarily follow that, unless the property thus seized and appropriated by the’ mere force of the judgment, should be disposed of within the time prescribed by law as the utmost limit for such seizure to hold its grasp, the lien created by such judgment would be lost, and that forever. This is the conclusion to which the Supreme Court of New York arrived, and it is not easy to conceive how they cnuld have reached a different result from the statutes of that State, and the - construction which they were bouud to place upon them. But how-will the reason of this rule apply to our system of jurisprudence? We, lit is true, readily concede that the judgments of our circuit courts attach to, and constitute a lien upon all the real estate of the persons against whom they are rendered, situate in the county for which the court is held, from the date of their rendition, and that such lien continues for the space of three years, subject to be revived, &c.; but wc deny that such judgment has the force and effect of a levy, so as to operate as a seizure and appropriation of the property upon which it liens. A levy upon lands before sale is as necessary, and has the same force and effect as a levy upon personal property. (See Fowler v. Anderson, 3 Eng. Rep. S88, and Whiting & Slark v. Beebe and others, decide,d at the last term of this court.) This being true, the instant the levy is made, the judgment, in contemplation of law is satisfied, and will be so regarded until such levy is disposed of by sale or otherwise. If the judgment is satisfied by the levy of the fi. fa., and the lien of the judgment is not thereby kept up and extended to the day of sale, it would present a strange state of case, as the party could not take out another fi. fa., neither could he revive the judgment by scire facias, nor maintain an action upon such judgment. By having sued out his execution and levied it before the expiration of the lien, but having failed to sell within that time, he would be left utterly remediless upon his judgment. But we are here met by the argument that it is conceded, that when he has made his levy before the expiration of the lien, but has not actually sold the property, that he may do so afterwards, but in that case he cannot claim the benefit of his judgment lien, but that he is confined to that which attaches upon the delivery of the writ to the officer. Let us examine this position, and see what it might lead to in its practical operation. A party has a valid subsisting judgment against an individual, and in order to avail himself of his judgment lien, he sues out execution and has it levied upon the lands of his debtor, eighteen months before the expiration of three years from the rendition of his judgment, but from the operation of numerous causes, over which he can have no control, such as injunctions, restricting orders, failure of the courts, &c., he is not enabled to effect a sale under his fi. fa. until after the lapse of that time. Is he, under such circumstan* ces, to lose the benefit of his judgment lien? Such cannot be the construction of the law. It is perfectly reasonable that the plaintiff in the execution in the State of New York, should be required actually to sell within the limitation, because that the judgment was a quasi execution, as by force of it the property was seized and appropriated, and consequently, the sale had to take place, if at all, so as to save-the benefit of such lien, during the life time of such quasi execution. The case, however, is very different here. The judgment creditor procures his execution to be levied in ample time to have a sale of the property in the established course of things, and-without any fault of his, he is prevented from consummating his object until the lapse of the time prescribed by law for the continuance of his lien. To extend the lien of the judgment under such circumstances, where the execution is strictly prosecuted and followed up to a consummation of a sale of the property, we think would be fully warranted, by a reasonable and sensible construction of the statute. Any other construction would greatly endanger the right of creditors, and the one that we have adopted need, not injure any one. The issuance and levy of an execution are public acts, of which every one may be informed, if such information shall be desired, and therefore it is, that no hardship can result from requiring the community to take notice of such acts, and to purchase such property at their peril. Entertaining these views upon 'the several questions herein involved, we think there is no error in the decree of the circuit court, and consequently, the same is in all things affirmed.